WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ak-Chin Indian Community,<br><br>    Plaintiff,<br><br>v.<br><br>Maricopa-Stanfield Irrigation & Drainage District, *et al.*,<br><br>    Defendants. | No. CV-20-00489-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Maricopa-Stanfield Irrigation & Drainage District's ("MSIDD") Motion to Dismiss (Doc. 11, "MSIDD Mot.") and Defendant Central Arizona Irrigation & Drainage District's ("CAIDD") Motion to Dismiss (Doc. 12, "CAIDD Mot."). Plaintiff filed a combined Response (Doc. 17, "Resp.") and each Defendant filed its own Reply (Doc. 21, "MSIDD Reply"; Doc. 22, "CAIDD Reply"). For the following reasons, the Court denies Defendants' Motions to Dismiss, but finds the United States is a necessary party that must be joined under Federal Rule of Civil Procedure 19.

**I.   BACKGROUND**

Plaintiff Ak-Chin Indian Community ("Plaintiff" or "Ak-Chin") is a federally recognized Indian tribe and the beneficial owner and occupant of a 22,000-acre reservation within Pinal County. (Doc 1, "Compl." ¶ 10.) Defendants are irrigation and drainage districts and Arizona municipal corporations that deliver irrigation water to lands within their respective service areas. (Compl. ¶ 11.)

The United States established Plaintiff's reservation in 1912. (Compl. 15.) Ak-Chin has historically been, and continues to be, a farming-based community and agrarian economy. External interference with Plaintiff's water security led to the 1978 Settlement Act, a settlement between Plaintiff and the United States in which the government agreed to provide Ak-Chin 85,000 acre-feet ("AF") of water suitable for irrigation on a permanent, annual basis.  (Compl. ¶¶ 20–22.)

In 1984, the United States and Ak-Chin amended the terms of the 1978 Settlement Act. Under the 1984 Settlement Act, Ak-Chin is entitled to a permanent water supply of not less than 75,000 AF of surface water "suitable for agricultural use" delivered "from the main project works of the Central Arizona Project" to the Ak-Chin reservation. (Compl. ¶ 24; Ak-Chin Water Use Act of 1984 ("1984 Act"), Pub. L. No. 98–530, 98 Stat. 2698 (1984) § (2)(a).) The first 50,000 AF is taken from an allotment of already-diverted Colorado River water called "Yuma Mesa" water, and is priority 3 water, the highest priority within the Central Arizona Project ("CAP"). (Compl. ¶ 25; 1984 Act § (2)(f)(1).) The next 25,000 AF is called Indian Priority water, the second highest priority water within the CAP. (Compl. ¶ 26; 1984 Act § (2)(f)(2).) Additionally, in any year in which sufficient surface water is available, the United States "shall deliver" an additional quantity of water as requested by Ak-Chin not to exceed 10,000 AF. (Compl. ¶ 27; 1984 Act § (2)(b).)

Plaintiff and the United States also entered into contracts addressing Ak-Chin's settlement water. One such contract is the 1985 Contract, which restates many of the key provisions of the 1984 Settlement Act. Except in times of shortage or in the event the United States fails to deliver a full water supply, the 1985 Contract limits Ak-Chin's use of groundwater within the exterior boundaries of the reservation to domestic and municipal uses. (Compl. ¶ 34; Compl. Ex. A § 8.)

To meet these obligations, the 1984 Settlement Act requires the United States to "design, construct, operate, maintain, and replace" all necessary facilities for conveying the water. (Compl. ¶ 31.) In 1988, the United States, MSIDD, and CAIDD entered into an agreement for the operation and maintenance of several water distribution facilities

constructed and owned by the United States ("Operating Agreement"). (Compl. ¶ 36.) The Santa Rosa Canal (the "Canal") is the conveyance facility through which Plaintiff receives its CAP settlement waters. (Compl. ¶ 5.) Pursuant to the Operating Agreement, the Canal includes conveyance capacity for CAP water deliveries to Plaintiff, as well as "conveyance capacity for MSIDD and the United States." (CAIDD Mot. Ex. 1, "Op. Agreement" at 3.)[1] MSIDD is deemed the "Watermaster" and is responsible for the care, operation, and maintenance of the Canal. The Operating Agreement identifies compliance with both the 1984 Settlement Act and certain repayment contracts between Defendants and the United States as the purposes of the Operating Agreement. (Op. Agreement at 2–3.)

Plaintiff alleges Defendants have pumped and continue to pump groundwater from wells within their respective districts into the Canal. This groundwater, which is of a lower quality than the CAP water, commingles with Ak-Chin's settlement water. (Compl. ¶ 46.) As a result, Plaintiff frequently receives water that is higher in sodium and other constituents than CAP water diverted from the Colorado River. This water has negatively impacted Plaintiff's farming by causing soil salinization, reducing quality and quantity of crop yields, preventing the farming of certain salt-sensitive crops, and requiring more water and resources to stabilize the soil. (Compl. ¶¶ 53–59.) Plaintiff alleges Defendants' continued pumping of groundwater into the Canal will reduce its ability to sustain farming operations and ultimately affect its sovereignty and economic well-being.

Accordingly, this lawsuit seeks to permanently enjoin Defendants from "materially impairing or degrading the quality of [CAP] water that Ak-Chin is entitled to receive under federal law and contract." (Compl. ¶ 1.) The Complaint asserts four claims: (1) interference with Plaintiff's higher priority CAP rights; (2) nuisance; (3) trespass; and (4) unjust enrichment. Both Defendants move to dismiss the Complaint entirely on the independent grounds of abstention and failure to join a necessary and indispensable party, the United States. MSIDD also moves for partial dismissal on ripeness grounds.

---

[1] The Court takes judicial notice of the Operating Agreement without converting the matter to a motion for summary judgment because the Complaint necessarily relied upon it in its discussion of the relationship of the United States, Defendants and the Canal. *See Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 768 (D. Ariz. 2012).

- 3 -

## II. LEGAL STANDARDS

### A. Abstention

Although MSIDD characterizes its Motion as one brought in part under Federal Rule of Civil Procedure 12(b)(1), neither Defendant seriously contends this Court lacks subject matter jurisdiction. Indeed, the Court has jurisdiction through at least two avenues: 28 U.S.C. § 1331 and § 1362. *See Gila River Indian Cmty. v. Cranford*, --F. Supp. 3d --, No. CV-19-00407-TUC-SRB, 2020 WL 2537435, at *6–7 (D. Ariz. May 12, 2020). Instead, Defendants argue the Court should abstain from exercising its jurisdiction pursuant to the *Colorado River* doctrine. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The Court makes this distinction because the burdens are switched: Plaintiff must prove the existence of subject matter jurisdiction, whereas Defendants have the burden to prove applicability of an abstention doctrine. "Federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them," and abstention based on parallel state litigation should be invoked only in "exceptional" circumstances. *Id.* at 818.

### B. Failure to Join a Necessary Party

Under Rule 12(b)(7), a party may move to dismiss an action for failure to join a necessary and indispensable party under Rule 19. Courts apply a three-step process when evaluating a Rule 12(b)(7) Motion. *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). First, the court identifies whether a nonparty is required to join. A nonparty is necessary if (A) the court cannot accord complete relief in the nonparty's absence, or (B) the nonparty claims an interest in the action such that its absence may (i) impair or impede its ability to protect that interest or (ii) expose an existing party to the risk of incurring multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1). This analysis heavily depends on the facts and circumstances of the case. *Peabody W. Coal Co.*, 610 F.3d at 1081. If the court concludes a party is necessary under Rule 19(a), it must then determine whether joinder is feasible. *Id.* at 1078. Finally, if the absent party cannot be joined, the court must determine whether, "in equity and good conscience," the action may proceed in its absence or should be dismissed. *Id.*; *see* Fed. R. Civ. P. 19(b).

## III. ANALYSIS

### A. Abstention: *Colorado River* Doctrine

The *Colorado River* doctrine provides that in narrow instances, a federal court with subject matter jurisdiction over a water rights case should nonetheless refrain from hearing the matter when a state court is concurrently adjudicating those same water rights in a comprehensive stream adjudication. *Colo. River Water Conservation Dist.*, 424 U.S. at 817–20. Crucial to this form of abstention is the McCarren Amendment, which expressly waives the federal government's sovereign immunity in a suit "for the adjudication of rights to the use of water of a river system or other source." 43 U.S.C. § 666(a). The McCarren Amendment also provides government consent to suit to determine reserved water rights held by the United States on behalf of Indian tribes. *Colo. River Water Conservation Dist.*, 424 U.S. at 810.

In *Colorado River*, the United States sued in federal court on behalf of itself and certain Indian tribes, seeking a declaration of their water rights in the tributaries of Colorado Water Division 7. *Id.* at 805. However, an action in state court to comprehensively adjudicate water rights in Division 7 was already underway. The Supreme Court concluded the policy behind the McCarren Amendment—"avoidance of piecemeal adjudication of water rights in a river system"—and the particular characteristics of the litigation warranted dismissal of the federal action in favor of adjudicating the United States and the tribes' Division 7 water rights in the pending state court action. *Id.* at 819.

The Supreme Court revisited the *Colorado River* doctrine in *San Carlos Apache Tribe*, holding it can also apply to federal suits brought directly by Indian tribes, rather than by the United States, raising only Indian water rights claims. *San Carlos Apache Tribe*, 463 U.S. at 567. Emphasizing again the policy behind the McCarren Amendment and the "important federal interest in allowing all water rights on a river system to be adjudicated in a single comprehensive state proceeding," *id.* at 551, the Court held that when there are concurrent stream adjudications in state court, federal courts should abstain from deciding water-rights cases where doing so will avoid (1) duplicative and wasteful proceedings,

1   (2) inconsistent dispositions of property, or (3) "an unseemly and destructive race to see
2   which forum can resolve the same issues first." *Id.* at 567; *see also Gila River Indian Cmty.*,
3   -- F. Supp. 3d --, 2020 WL 2537435, at *9.

4         Here, Defendants argue Plaintiff's water rights claims are subject to the Gila River
5   General Stream Adjudication currently proceeding in Maricopa County Superior Court.
6   (MSIDD Mot. at 7–8; CAIDD Mot. at 10.) Specifically, MSIDD characterizes the action
7   as one in which Plaintiff alleges it is a senior water rights holder to Defendants and is
8   entitled to certain water quality, which Defendants are impairing. (MSIDD Mot. at 7.)
9   MSIDD contends this is precisely the type of piecemeal litigation the *Colorado River*
10  doctrine and the McCarren Amendment aim to avoid. It argues the Gila River Adjudication
11  also employs the technical expertise and administrative machinery of the Arizona
12  Department of Water Resources and has been pending for decades, whereas the instant
13  case is in its infancy. (MSIDD Mot. at 8.)

14        The Court is unconvinced by Defendants' relatively superficial abstention
15  argument.[2] The Gila River Adjudication, though sprawling and complex, is just that: an
16  adjudication of all water rights in the Gila River and its tributaries. *Matter of Rights to Use*
17  *of Gila River*, 830 P.2d 442, 444 (Ariz. 1992). It is not an adjudication of all water rights
18  in Arizona, and specifically, is not an adjudication of rights in the Colorado River water
19  that supplies the CAP. *See Maricopa-Stanfield Irr. & Drainage Dist. v. United States*, 158
20  F.3d 428, 431 (9th Cir. 1998) ("[T]he Central Arizona Project . . . allocates Arizona's share
21  of Colorado River water after other users with perfected rights take their water."). In fact,
22  the Arizona Supreme Court has expressly stated that "CAP water is not from the Gila River
23  system and source and is outside the adjudication court's jurisdiction." *In re Gen.*
24  *Adjudication of All Rights To Use Water In the Gila River Sys. & Source*, 224 P.3d 178,
25  186 (Ariz. 2010) (excluding from its review of a tribe's settlement agreement in the Gila
26  River Adjudication the provisions pertaining to the tribe's CAP water). Plaintiff's

---

[2] MSIDD spends most of its argument in its Motion explaining what the *Colorado River* doctrine is, but falls shorts on actually applying it to the dispute in this case. CAIDD's two-paragraph dedication to the doctrine is even less persuasive.

Complaint pertains to Defendants' interference with Plaintiff's already-decreed CAP water, not to the adjudication of its water rights in the Gila River or its tributaries. The action is therefore beyond the state adjudication court's jurisdiction. *See In re Gen. Adjudication Of All Rights To Use Water In Gila River Sys. & Source*, 173 P.3d 440, 447 (Ariz. 2007).

In an effort to bring this case within the purview of the Gila River Adjudication, MSIDD in reply contends the heart of the case is not about Plaintiff's CAP water rights, but is instead about Defendants' Irrigation Grandfathered Rights, which are subject to the Gila River Adjudication. (MSIDD Reply at 2–4.) But MSIDD fails to adequately show how an adjudication of the "nature, extent and relative priority" of its irrigation rights in the Gila River Adjudication would resolve or bear on Plaintiff's claims here, or vice versa. *See* A.R.S. § 45-252(A). Said another way, it is not clear that claims concerning *where* allegedly lower-quality pumped groundwater is being dispensed, *i.e.*, into the Canal, impacts the nature, extent, or relative priority of those irrigation rights. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) ("A district court may enter [a *Colorado River* stay] only if it has full confidence that the parallel state proceeding will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.").

CAIDD's Reply similarly misses the mark. CAIDD suggests that if "CAP water is curtailed by drought or otherwise runs out, the Ak-Chin will need a different source, which is likely to be groundwater. Other users within the same sub-watershed as the Ak-Chin will be impacted by the Ak-Chin's claims to priority rights to specified groundwater quantities." (CAIDD Reply at 9.) But whether this hypothetical situation comes to fruition does not change the allegations in Plaintiff Complaint, which, again, pertain to the alleged degradation of CAP water to which Plaintiff is *presently* entitled under statute and contract. Plaintiff is not seeking a determination of the nature, extent and relative priority of its water rights—groundwater or otherwise—in the Gila River system. *See* A.R.S. § 45-252(A). Its rights to CAP water have already been decreed by contract and federal statute.

Both Defendants also offer conclusory statements that federal reserved water rights extend to groundwater if necessary, and that a state court stream adjudication is authorized to handle such matters. (MSIDD Reply at 3; CAIDD Reply at 9.) While this may be true, *see In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 989 P.2d 739, 751 (Ariz. 1999), Defendants do not demonstrate how that brings a suit to enjoin degradation of *CAP water* into the realm of the Gila River Adjudication.

In short, Defendants have failed to demonstrate that this Court's adjudication of the instant matter will result in duplicative proceedings, inconsistent dispositions of property, or a race with the Gila River Adjudication to resolve the same issues first. *San Carlos Apache Tribe*, 463 U.S. at 567. The circumstances justifying abstention under the *Colorado River* doctrine are "exceedingly rare." *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005); *Colo. River Water Conservation Dist.*, 424 U.S. at 819. ("Only the clearest of justifications will warrant dismissal."). Defendants have not met their burden to show those circumstances here.[3]

**B.     Failure to Join a Necessary Party**

Defendants argue the United States is a necessary party under Rule 19. A party is necessary if, among other reasons, complete relief cannot be accorded to the existing parties in the nonparty's absence. *See* Fed. R. Civ. P. 19(a)(1)(A)(i). "This factor is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983).

---

[3] A final point worth mentioning. A court in this district recently rejected application of the *Colorado River* doctrine in a not entirely dissimilar case. In *Gila River Indian Community*, an Indian tribe sued to enjoin upstream individuals from pumping groundwater for irrigation purposes—groundwater that allegedly consisted in part of waters of the Gila River, in which the defendants had no decreed rights. *Gila River Indian Cmty.*, -- F. Supp. 3d --, 2020 WL 2537435, at *2. The court, however, rejected the defendants' request for dismissal under the *Colorado River* doctrine on the grounds that their "groundwater rights are not within the purview of the Gila Adjudication, whose stated and statutory purpose is to determine surface water rights." *Id.* at *9. Without holding that groundwater is in fact entirely outside the Gila River Adjudication, the Court finds the instant case even further removed from the Adjudication, as Plaintiff is not seeking a decree of any particular user's rights to any water in the Gila River watershed.

Pursuant to the 1984 Act and the 1985 Contract, the United States is obligated to annually deliver a permanent supply of 75,000 AF of water from the Central Arizona Project to Plaintiff's reservation. The 1984 Act also mandates the United States "design, construct, operate, maintain, and replace" the conveyance facilities to deliver the CAP water to Plaintiff. 98 Stat 2698 § 2(e).

To meet these obligations, the United States subcontracted with Defendants to operate and maintain the water conveyance facilities, including the Canal. According to the Operating Agreement between the United States and Defendants, the "water distribution systems shall be shared by various Indian entities and non-Federal entities[.]" (Op. Agreement at 2.) Plaintiff alleges that the purpose of the Canal's construction and operation, as outlined in the Operating Agreement, was the delivery of water from the CAP facilities to Plaintiff "and also for irrigation of lands in Pinal County." (Compl. ¶ 36.) The Operating Agreement therefore appears to create among its signatories obligations to water users other than Plaintiff. Moreover, the Operating Agreement allows—or at least contemplates—Defendants' pumping of at least some groundwater into the distribution facilities. (Op. Agreement § VI.3.)

In a somewhat analogous Ninth Circuit case, a plaintiff sued the Salt River Project ("SRP") for its failure to hire him based allegedly on his non-Navajo tribal affiliation. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002). SRP had a lease with the Navajo Nation for the Navajo Generation Station that contained a provision requiring SRP to give hiring preference to members of the Navajo Nation. The following passage from the Ninth Circuit is instructive here:

> Plaintiff seeks injunctive relief to ensure his employment at SRP and to prevent SRP from employing the Navajo hiring preference policy required by its lease with the Nation. Yet only SRP and [Plaintiff]—and not the Nation—would be bound by such an injunction. The Nation could still attempt to enforce the lease provision in tribal court and ultimately, even attempt to terminate SRP's rights on the reservation. The district court correctly observed that "if SRP were to ignore the injunction, [Plaintiff] and others like him would not receive the employment they seek," whereas "if

> SRP were to comply with the injunction, the Navajo Nation would be likely to take action against SRP under its lease."

*Id.* at 1155. The court held the Navajo Nation was a necessary party because in its absence, complete relief could not be accorded to either the plaintiff or the defendant.

Here, if the Court granted Plaintiff the relief it requests in Count 1, Defendants would be ordered to either decrease or cease pumping groundwater into the Canal. If Defendants ignored the injunction based on their contractual obligations to the United States, Plaintiff would not receive the redress it seeks for the alleged degradation of its CAP water. If Defendants complied with the injunction, the United States, who would not be bound by a judgment in its absence, could sue Defendants for failing to operate and maintain the Canal within the terms of the Repayment Contracts and the Operating Agreement, including by impairing the delivery of water to non-tribal entities contemplated in the Operating Agreement. *See Ak-Chin Indian Cmty. v. Cent. Arizona Water Conservation Dist.*, No. CV-17-00918-PHX-DGC, 2017 WL 3190783, at *3 (D. Ariz. July 27, 2017) (holding the United States a necessary party because it had contracts with both the plaintiff and defendant regarding Ak-Chin's CAP water, and the defendant could be left with a "Hobson's choice" of complying with a judgment by which the United States would not be bound); *Havasupai Tribe v. Anasazi Water Co. LLC*, 321 F.R.D. 351, 355 (D. Ariz. 2017) (holding the United States was necessary under Rule 19(a)(1)(A)(i) because in its absence, the defendants "could spend great money, time and effort, and resolve this lawsuit . . . only to face the same or a substantially similar lawsuit again, brought by the United States on behalf of the Tribe"). A judgment against Defendants could also impinge on their rights to use the Canal to convey pumped groundwater—rights that are allegedly born out of their contracts with the United States. Accordingly, the Court cannot accord complete relief to either Plaintiff or Defendants in the absence of the United States.

Having determined the United States is a necessary party, the Court must assess whether its joinder is feasible. Joinder of the United States is generally infeasible unless it

has waived sovereign immunity. Plaintiff contends the United States has waived its immunity to this suit under the Reclamation Reform Act. The relevant portion of that Act provides: "Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law." 43 U.S.C. § 390uu. As Plaintiff points that, "[t]his language is best interpreted to grant consent to join the United States in an action between other parties— for example, two water districts, or a water district and its members—when the action requires construction of a reclamation contract and joinder of the United States is necessary." (Resp. at 12, citing *Orff v. United States*, 545 U.S. 596, 602 (2005).)

Here, the Operating Agreement and related Repayment Contracts were executed pursuant to "provisions of Federal Reclamation Law, including but not limited to the Colorado River Basin Project Act . . . and the Reclamation Projects Act[.]" (Op. Agreement at 1–2.) Defendants' ability to pump groundwater into the Canal, as raised by Defendants, places those Federal reclamation law contracts directly at issue. Plaintiff's 1985 Contract with the United States was also executed pursuant to Federal reclamation law. (*See* Compl. Ex. A.) MSIDD concedes joinder is feasible under Rule 19 and 43 U.S.C. § 390uu. (MSIDD Reply at 9.) CAIDD's single case citation questioning applicability of § 390uu does not support its argument against joinder. (CAIDD Reply at 4.) *See State of Wyo. v. United States*, 933 F. Supp. 1030, 1038 (D. Wyo. 1996) ("[Section 390uu] waives the United States' sovereign immunity from a declaratory relief action brought by a party to a contract with the United States to establish the party's rights under that contract.").

Plaintiff is therefore ordered to join the United States as a Defendant to this action under Rule 19.

**C.     Ripeness**

MSIDD argues Plaintiff's request for a permanent injunction against Defendants degrading its CAP water is partially unripe because Plaintiff supports its request with contingent future events. Namely, the Complaint alleges Defendants have agreed to

completely relinquish their CAP water entitlement by 2023, publicly disclosed their intent to pump an additional 70,000 AF per year, and have secured funding to install more groundwater wells. (Compl. ¶¶ 50–51.) To that end, Defendants request dismissal of Plaintiff's claims to the extent they are "founded on alleged hypothetical harm caused by water infrastructure that does not presently exist." (MSIDD Mot. at 13.)

The doctrine of ripeness has a constitutional component, derived from Article III, and a prudential one. *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014). The constitutional component largely coincides with Article III standing's injury-in-fact prong, which requires the alleged injury be actual or certainly impending. *Id*. If, for example, Plaintiff in this action sought an injunction against the construction of the wells themselves, there may be ripeness concerns. However, the Complaint seeks to enjoin actions it alleges have already harmed Plaintiff and continue to occur: the commingling of groundwater with its CAP entitlement water. All four of Plaintiff's claims are based on these already-sustained injuries. To the extent the continued and/or allegedly expanding groundwater pumping exacerbate the injury, the Court does not interpret it as a separate or hypothetical injury, but as a continuation of the original injury stemming from the same ongoing action. Accordingly, the Court denies MSIDD's Motion for partial dismissal on ripeness grounds.

**IT IS THEREFORE ORDERED** denying Defendants' Motions to Dismiss. (Docs. 11 & 12.) The Court agrees, however, that the United States is a necessary party, but finds it can be feasibly joined.

**IT IS FURTHER ORDERED** that Plaintiff amend its Complaint to join the United States within 14 days of this Order.

Dated this 14th day of September, 2020.

Honorable John J. Tuchi
United States District Judge