**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ak-Chin Indian Community,<br><br>    Plaintiff,<br><br>v.<br><br>Maricopa-Stanfield Irrigation & Drainage District, *et al.*,<br><br>    Defendants. | No. CV-20-00489-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff and Counter-Defendant Ak-Chin Indian Community's Motion to Dismiss (Doc. 73-1, "Ak-Chin MTD"). Defendant and Counterclaimant Central Arizona Irrigation & Drainage District ("CAIDD") filed two Responses[1] (Doc. 46, "First CAIDD Resp.") (Doc. 81, "Second CAIDD Resp.") and Ak-Chin filed a Reply (Doc. 86, "Ak-Chin Reply"). Also at issue is Defendant and Cross-Defendant United States's Motion to Dismiss (Doc. 56, "U.S. MTD") CAIDD's crossclaim, to which CAIDD filed a Response (Doc. 65, "CAIDD Resp. U.S.") and the United States filed a Reply (Doc. 69, "U.S. Reply"). Further at issue is Ak-Chin's Motion to Strike (Doc. 38-1 "MTS"), CAIDD's as well as Maricopa-Stanfield Irrigation & Drainage District's Responses (Doc. 45, "MSIDD Resp.") (Doc. 47, "CAIDD Resp. MTS") and Ak-Chin's Reply (Doc. 49, "Ak-Chin Reply MTS"). Lastly at issue is CAIDD's Jury Demand (Doc. 36). For the following reasons, the

---

[1] Ak-Chin previously filed a Motion to Dismiss CAIDD'S counterclaim asserted in its first Answer (Doc. 39-1), and CAIDD filed a Response (Doc. 46, "First CAIDD Resp."). Although that Motion is now mooted by Ak-Chin's current Motion to Dismiss, CAIDD purports to incorporate its first Response into its current Response (Doc. 81, "Second CAIDD Resp."). In order to prevent any confusion, the Court will refer and cite to each of CAIDD's Responses separately.

Court will grant both Ak-Chin's Motion to Dismiss as well as the United States's Motion to Dismiss and deny CAIDD's Jury Demand as well as Ak-Chin's Motion to Strike.

**I.  BACKGROUND**

Since the Court's previous Order, the parties have filed multiple iterations of pleadings and motions, some of which are at issue and others that are now moot. The Court will briefly summarize the current procedural posture of the case.

The Court previously ordered Ak-Chin Indian Community ("Plaintiff" or "Ak-Chin") to join the United States as a necessary party pursuant to the Reclamation Reform Act of 1982, 43 U.S.C. § 390uu. (Doc. 29, "Order" at 12.) Ak-Chin joined the United States as a party to its claims against CAIDD and Maricopa-Stanfield Irrigation & Drainage District ("MSIDD") but also brought a separate claim for declaratory action against the United States. (Doc. 30, First Amended Complaint ¶¶ 12, 75-78.) CAIDD filed an Answer and asserted a counterclaim against Ak-Chin as well as a crossclaim against the United States. (Doc. 35.) The United States subsequently moved to dismiss Ak-Chin's claim for declaratory judgment as well as CAIDD's crossclaim on the basis of sovereign immunity. (Doc. 55 & U.S. MTD.) Ak-Chin then filed its Second Amended Complaint against all Defendants, which kept the United States joined as a necessary party but removed its claim for declaratory judgment. (Doc. 60, Second Amended Complaint ("SAC") ¶ 12.) CAIDD filed a new Answer, which again asserted the same counterclaim and crossclaim against Ak-Chin and the United States (Doc. 67, "Answer").[2] In response, Ak-Chin and the United States filed the Motions to Dismiss currently at issue.

**A.  Ak-Chin Claims**

Plaintiff Ak-Chin is a federally recognized Indian tribe and the beneficial owner and occupant of a 22,000-acre reservation within Pinal County. (SAC ¶ 10.) CAIDD and MSIDD are irrigation and drainage districts and Arizona municipal corporations that deliver irrigation water to lands within their respective service areas. (SAC ¶ 11.)

---

[2] Because CAIDD's crossclaim in its current Answer was identical to the crossclaim in its previous Answer, the Court will consider the United States's Motion to Dismiss and subsequent briefing filed regarding the initial Answer's crossclaim.

- 2 -

The United States established Plaintiff's reservation in 1912. (SAC ¶ 15.) In 1978, Congress approved the 1978 Settlement Act, a settlement between Plaintiff and the United States in which the government agreed to provide Ak-Chin 85,000 acre-feet ("AF") of water suitable for irrigation on a permanent, annual basis. (SAC ¶ 23.)

In 1984, the United States and Ak-Chin amended the terms of the 1978 Settlement Act. Under the 1984 Settlement Act, Ak-Chin is entitled to a permanent water supply of not less than 75,000 AF of surface water "suitable for agricultural use" delivered "from the main project works of the Central Arizona Project" ("CAP") to the Ak-Chin reservation. (SAC ¶¶ 25-26; Ak-Chin Water Use Act of 1984 ("1984 Act"), Pub. L. No. 98–530, 98 Stat. 2698 (1984) § (2)(a).)

Plaintiff and the United States also entered into contracts addressing Ak-Chin's settlement water. One such contract is the 1985 Contract, which restates many of the key provisions of the 1984 Settlement Act. Except in times of shortage or in the event the United States fails to deliver a full water supply, the 1985 Contract limits Ak-Chin's use of groundwater within the exterior boundaries of the reservation to domestic and municipal uses. (SAC ¶ 35, Ex. A § 8.)

To meet these obligations, the 1984 Settlement Act requires the United States to "design, construct, operate, maintain, and replace" all necessary facilities for conveying the water. (SAC ¶ 33.) In 1988, the United States, MSIDD, and CAIDD entered into an agreement for the operation and maintenance of several water distribution facilities constructed and owned by the United States for the purpose of delivering waters from the CAP facilities to the Community as well as to irrigate the lands in Pinal County. ("Operating Agreement"). (SAC ¶ 38.) The Santa Rosa Canal (the "Canal") is the conveyance facility through which Plaintiff receives its CAP settlement waters. (SAC ¶¶ 45-47.)

Ak-Chin alleges CAIDD and MSIDD have pumped and continue to pump groundwater from wells within their respective districts into the Canal. This groundwater, which is of a lower quality than the CAP water, commingles with Ak-Chin's settlement

water. (SAC ¶ 48.) As a result, Plaintiff frequently receives water that is higher in sodium and other constituents than CAP water diverted from the Colorado River. This water has negatively impacted Plaintiff's farming by causing soil salinization, reducing quality and quantity of crop yields, preventing the farming of certain salt-sensitive crops, and requiring more water and resources to stabilize the soil. (SAC ¶¶ 55–61.) Plaintiff alleges Defendants' continued pumping of groundwater into the Canal will reduce its ability to sustain farming operations and ultimately affect its sovereignty and economic well-being. (SAC ¶ 67.)

Accordingly, Ak-Chin seeks to permanently enjoin CAIDD and MSIDD from "materially impairing or degrading the quality of [CAP] water that Ak-Chin is entitled to receive under federal law and contract." (SAC ¶ 1.) The Second Amended Complaint asserts four claims: (1) interference with Plaintiff's higher priority CAP rights; (2) nuisance; (3) trespass; and (4) unjust enrichment.

### B. CAIDD Counterclaim

In its Answer to the Second Amended Complaint, CAIDD brings a single counterclaim against Ak-Chin for unjust enrichment. CAIDD alleges that when CAIDD first introduced water to the Canal, the CAP water was of lower quality than it is at present and thus combining the CAP water with groundwater improved the quality of the water delivered to Ak-Chin. (Answer at 14 ¶ 8.) Ak-Chin did not compensate CAIDD for this additional benefit. (Answer at 14 ¶ 9.)

CAIDD additionally alleges multiple reasons that it is not at fault for the poor quality of Ak-Chin's water and soil. First, there is an operational chicken farm that introduces nitrates into Ak-Chin's soil. Additionally, Ak-Chin does not properly maintain the Ak-Chin reservoir and water treatment plant, which has caused degradation of the water. (Answer at 14-15 ¶¶ 11-15.)

Finally, CAIDD alleges that it does not have an obligation to provide Ak-Chin with water of a particular quality. (Answer at 14 ¶ 10.) Based on these allegations, CAIDD

requests an order enjoining Ak-Chin "from seeking to impose water quality standards on CAIDD that it has no requirement to deliver to the Ak-Chin." (Answer at 16 ¶ 27.)

Ak-Chin now moves, pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the counterclaim on the basis of tribal sovereign immunity.

### C. CAIDD Crossclaim

CAIDD additionally brings a crossclaim directly against the United States for declaratory judgment that CAIDD does not owe a duty to the United States or Ak-Chin to ensure that the water satisfies a particular quality standard. (Answer at 20 ¶ 25.) CAIDD alleges that pursuant to the 1985 Contract and related legislation, the United States is obligated to provide "surface waters" to Ak-Chin that are "suitable for agricultural use. (Answer at 18 ¶ 9.) CAIDD is not a party to the 1985 contract and does not owe the United States or Ak-Chin contractual or common law duties (Answer at 19 ¶¶ 14-15.) CAIDD further alleges that the United States owns and is responsible for the maintenance of the Canal and Ak-Chin reservoir. (Answer at 18-19 ¶¶ 11-13.) Finally, CAIDD alleges, upon information and belief, that the United States will assert that CAIDD owes obligations to the United States or Ak-Chin regarding the water quality introduced by CAIDD into the Canal. (Answer at 19-20 ¶¶ 16, 23.)

Pursuant to Rule 12(b)(1), the United States moves to dismiss CAIDD's crossclaim because Congress has not waived the United States' sovereign immunity.

## II. LEGAL STANDARD

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*,

424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

"[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513-14 (2006).

## III. ANALYSIS

### A. CAIDD Counterclaim Against Ak-Chin

Indian tribes are "domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014). "Tribes are shielded not only from suits for money damages, but from declaratory and injunctive relief as well." *Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1096 (9th Cir. 2017). A tribe may only waive its right to sovereign immunity through "unequivocal waiver." *Id.* at 1099. While the filing of a lawsuit may indicate such unequivocal waiver, "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). "Tribal immunity even extends to compulsory counterclaims in excess of the original claims—despite the fact that compulsory counterclaims by definition arise out of the same transaction or occurrence." *Quinault*, 868 F.3d at 1097.

Here, Ak-Chin did not unequivocally waive its right to sovereign immunity. CAIDD contends that its counterclaim mirrors Ak-Chin's claims and thus is not barred by sovereign immunity. However, this is not dispositive for waiver; rather, the proper query is whether the sovereign consented to the counterclaim. *See Quinault*, 868 F.3d at 1098 (holding that

although counterclaims mirrored the Nation's complaint, the Nation "did not waive its immunity because it did not consent to any counterclaims."). In *Quinault*, the Nation brought RICO claims against the defendant for unpaid cigarette taxes. In response, defendant filed multiple counterclaims for a declaration that it had not violated the tax code as well as various claims that "went well beyond the contours of the Nation's suit." *Id.* The Ninth Circuit held that although the counterclaim for declaratory relief "mirrors the merits of the RICO controversy… [and] presents a closer call" than the other counterclaims, it involved "far less" than what was necessary for an unequivocal waiver of sovereign immunity. *Id.*

CAIDD does not attempt to distinguish *Quinault*. It instead argues that *Quinault* actually supports Ak-Chin's waiver of sovereign immunity because otherwise "it would make no sense" for the Ninth Circuit to differentiate between counterclaims that did and did not mirror the Nation's claims. (CAIDD Second Resp. at 4.) This argument ignores *Quinault's* actual holding and explanation that a sovereign does not always waive immunity to counterclaims that mirror the merits of the complaint.[3]

The few cases where courts held that a tribe waived its sovereign immunity through consent illustrate that CAIDD has not met its burden to demonstrate waiver. In *United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981), the Yakima Tribe intervened in a lawsuit filed by the United States to apportion fishing rights. The parties settled and signed an agreement giving jurisdiction to the District Court to resolve future issues. *Id.* at 1014-15. When a dispute arose over the management of the fisheries, the Ninth Circuit

---

[3] To the extent CAIDD relies on *Tohono O'odham Nation v. Ducey*, 174 F. Supp. 1194 (D. Ariz. 2016) for the proposition that all counterclaims that fall within the scope of the sovereign's claims constitute a waiver of sovereign immunity, *Quinault's* holding supersedes *Tohono* and renders that reliance misplaced. (CAIDD First Resp. at 6.) Regardless, CAIDD's counterclaim does not mirror Ak-Chin's claims. Whereas Ak-Chin requested an injunction preventing CAIDD and MSIDD from incorporating groundwater into the well, CAIDD's counterclaim seeks to enjoin Ak-Chin from "seeking to impose water quality standards on CAIDD that it has no requirement to deliver to the Ak-Chin." It is unclear what CAIDD means by "impose." Ak-Chin cannot force CAIDD to take any action except through the legal process, which it initiated through this lawsuit. Seeking to enjoin Ak-Chin from vindicating its alleged rights in any manner goes beyond Ak-Chin's requested relief.

- 7 -

found that the agreement indicated the Yakima Tribe's consent to the suit. *Id.* at 1016. No such agreement indicating consent is present in this case. *See also Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244-45 (8th Cir. 1995) (holding Tribe waived sovereign immunity where it filed action to quiet title and expressly requested court to order that defendants "assert any claims in the disputed lands they possessed against the Tribe.").

Moreover, the Ninth Circuit in *Oregon* worried that barring the counterclaims based on sovereign immunity would have the effect of allowing the tribe to use sovereign immunity to prevent the possibility of defeat in court. Here, that is not an issue because CAIDD can defend itself against the lawsuit even without asserting counterclaims. *See Quinault*, 868 F.3d at 1098 ("even without its counterclaim, the Estate still could defend against the Nation's RICO claim.") Indeed, CAIDD's affirmative defenses alleging "no contractual obligations or duties," contribution, comparative fault, unclean hands, and unjust enrichment encompass much of what CAIDD alleges in its counterclaim. (Answer at 12 ¶¶ 109-115.)

Finally, CAIDD argues that *Oregon* is analogous to this case because both cases are similar to equitable actions in rem. *Oregon*, 657 F.2d at 1015. (CAIDD Second Resp. at 2-3.) This argument lacks merit. In *Oregon*, the court needed to interpret treaties to determine fishing rights, including whether to enjoin the Yakima Tribe from certain fishing activities in order to preserve the Columbia River chinook salmon. The Ninth Circuit thus analogized the case to a proceeding where "a court possessed of the res in a proceeding in rem, such as one to apportion a fishery, may enjoin those who would interfere with that custody." *Id.* at 1015-16, quoting *Washington v. Washington Commercial and Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 692 n.32 (1979). Here, Ak-Chin moved to enjoin CAIDD from taking actions that allegedly degrade the water quality. Unlike the salmon in Oregon, the water is not a sparse resource that needs to be apportioned. The Court can thus decide the pertinent issues without reaching CAIDD's counterclaim.

The Court does not see how amendment of the Counterclaim could cure the defect. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Accordingly, the Court dismisses CAIDD's counterclaim with prejudice.

**B. CAIDD Crossclaim Against United States**

In order for the Court to exercise jurisdiction over CAIDD's crossclaim, it must find a basis for federal jurisdiction and that the United States waived its sovereign immunity. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). A waiver of the government's sovereign immunity "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

CAIDD argues that pursuant to Section 390uu, the United States waived sovereign immunity because CAIDD seeks a declaration concerning the contractual rights of the United States and Ak-Chin. (CAIDD Resp. U.S. at 5.) The United States counters that Section 390uu does not allow CAIDD to bring an independent crossclaim directly against the federal government. Section 390uu of the Reclamation Reform Act provides:

> Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law. The United States, when a party to any suit, shall be deemed to have waived any right to plead that it is not amenable thereto by reason of its sovereignty, and shall be subject to judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances. Any suit pursuant to this section may be brought in any United States district court in the State in which the land involved is situated.

43 U.S.C. § 390uu. Section 390uu waives the United States's sovereign immunity when the United States is joined as a necessary party to the litigation. *Orff v. United States*, 545 U.S. at 603. It does not, however, permit lawsuits directly against the United States. *Id.* at 604. (holding sovereign immunity barred plaintiff's suit against the United States and other federal entities to enforce contractual water rights). CAIDD attempts to distinguish *Orff* by arguing that it did not evaluate whether the United States may be sued by other parties after it had been joined in a lawsuit. (CAIDD Resp. U.S. at 5.) While the Supreme

Court did not opine on that specific issue, it unequivocally stated that Section 390uu "does not waive immunity from suits directly against the United States." *Id.* Moreover, *Ak-Chin Indian Cmty. v. Cent. Arizona Water Conservation Dist.*, No. CV-17-00918-PHX-DGC, 2018 WL 397233 (D. Ariz. Jan. 12, 2018) did consider the relevant issue – whether Section 390uu waived the United States's sovereign immunity to a direct crossclaim after the United States was properly joined as a defendant – and determined that it did not. *Id.* at *3 (holding crossclaim "brought directly against the United States… does not fall within Section 390uu's limited waiver of sovereign immunity."). Because CAIDD brought its crossclaim directly against the United States, Section 390uu does not apply to waive the United States's sovereign immunity.

Rather than distinguish *Cent. Arizona Water Conservation Dist.*, CAIDD contends that it is not binding and that it contradicts this Court's holding in *Roosevelt Irrigation Dist. v. United States*, No. CV-15-00448-PHX-JJT, 2015 WL 13747125 (D. Ariz. Nov. 16, 2015). However, *Roosevelt* is inapposite. In that case, the Arizona Superior Court dismissed plaintiff's initial lawsuit on the basis that the United States was a required party under Arizona Rule of Civil Procedure 19. *Id.* at *2. Because the Superior Court did not have jurisdiction over the United States, plaintiffs refiled the lawsuit in federal court against the initial defendants and the United States. *Id.* at *3. The United States agreed that it was a necessary party pursuant to Section 390uu but argued that the Court should dismiss it from the suit so that a party could join it under Rule 19. *Id.* at *3-4. This Court rejected that argument, finding that such actions would merely amount to "procedural gymnastics." *Id.* at *4. Nothing in *Roosevelt* indicates that Section 390uu waives sovereign immunity for a direct crossclaim against the United States where the United States has already been joined to the lawsuit.

Finally, CAIDD argues that if the Court dismisses its crossclaim, it will also have to dismiss the entire case. The Court disagrees. CAIDD first contends that dismissing the crossclaim against the United States would cause Ak-Chin's Complaint to "not comport with Rule 19." (CAIDD Resp. US at 7.) Ak-Chin's inclusion of the United States as a necessary

party does not need to comport with Rule 19. It needs to comport with Section 390uu. And compliance with Section 390uu does not necessitate rigid compliance with Rule 19. *Orff*, 545 U.S. at 603 (stating that while Section 390's language "calls to mind Rule 19(a)'s requirements, [w]e need not decide here whether the phrase limits the waiver of sovereign immunity to cases in which the United States could be joined under Rule 19(a)."); *see also Roosevelt*, 2015 WL 13747125 at *4 (declining to dismiss Federal Defendants so that they could be joined under Rule 19 because it would amount to "procedural gymnastics"). Next, CAIDD contends that dismissing its crossclaim would be at odds with the Court's previous Order to join the United States because no party will have a claim for relief against the United States. (CAIDD Resp. U.S. at 7.) Regardless of whether CAIDD's crossclaim is dismissed, the United States will be a party to this litigation. Ak-Chin's Second Amended Complaint raises allegations against the United States and thus complies with this Court's Order that the United States be joined as a necessary party to the litigation. Notably, CAIDD cites no authority for the proposition that there must be an affirmative claim for relief against a defendant in order for it to be properly joined in a lawsuit.

Again, the Court does not see how amendment of the crossclaim could cure the defect. *See Lopez*, 203 F.3d at 1130. Therefore, the Court dismisses CAIDD's crossclaim with prejudice.

### C. Ak-Chin Motion to Strike

Ak-Chin moves to strike CAIDD's Jury Demand as well as CAIDD and MSIDD's requests for attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

Federal Rule of Civil Procedure 12(f) grants the Court discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) only applies to pleadings as defined in Federal Rule of Civil Procedure 7(a) as a complaint, an answer, a counterclaim, or a cross claim. *See* Charles Alan Wright & Arthur R. Miller, *5C Fed. Practice & Procedure* § 1380 (3d ed.).

The Court will deny Ak-Chin's Motion to Strike CAIDD and MSIDD's requests for attorneys' fees. This litigation is in its early stages, as the parties still are exchanging

discovery. There appears to be a good faith dispute regarding whether Ak-Chin's claims for nuisance, trespass, and unjust enrichment arise under state law or federal common law as well as whether the claims arise from contract. Therefore, the Court does not find the requests for attorneys' fees "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). The Court will be better suited to decide these issues at the conclusion of the litigation and will do so at that time.

The Court also will deny Ak-Chin's Motion to Strike CAIDD's Jury Demand but will treat the Motion as an opposition to the Jury Demand. The Court also will consider CAIDD's Response to the Motion to Strike and Ak-Chin's subsequent Reply.

### D. CAIDD Jury Demand

CAIDD filed a Jury Demand for all claims brought in this case. The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." "The phrase 'Suits at common law' refers to suits in which legal rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are recognized, and equitable remedies are administered." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990). The Supreme Court applies a two-part test in order to determine whether a party has a right to a jury trial. First, it "compare[s] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Second, the Court "examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature." *Id.* The second element is more important than the first. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).

The first factor is inconclusive but that is of no import because "[w]e need not rest our conclusion on what has been called an 'abstruse historical' search for the nearest 18th-century analog." *Tull v. United States*, 481 U.S. 412, 421 (1987), citing *Ross v. Bernhard*, 396 U.S., at 538, n. 10, 90. Regarding the second factor, all claims at issue in this litigation seek equitable remedies. Both Ak-Chin's Second Amended Complaint and the United States's crossclaim against MSIDD and CAIDD seek equitable relief prohibiting them

from mixing groundwater into the Canal or otherwise "commingling water of a lesser quality than CAP water with Ak-Chin Settlement water." (SAC ¶ 102; Doc. 95 at 27, ¶¶ 1-4.)[4] Therefore, the second factor clearly cuts in favor of denying CAIDD's Jury Demand.

CAIDD acknowledges that Ak-Chin only seeks equitable relief but contends that a jury trial still is warranted because Ak-Chin's claims arise from certain agreements with the United States, and contract disputes are typically tried by a jury. CAIDD does not cite case law that supports this proposition. Instead, it cites cases where both equitable and legal claims were at issue. See e.g. *Bernhard*, 396 U.S. at 542 (explaining that there was "no doubt" that the corporation's claim in a derivative suit was at least partially legal because the corporation sought money damages); *Simmons v. Avisco, Local 713, Textile Workers Union of Am.*, 350 F.2d 1012, 1018 (4th Cir. 1965) (plaintiff seeking injunction as well as money damages was suing both at law and in equity). Because there are no legal claims at issue, these cases are inapposite. CAIDD's Jury Demand is thus denied.

**IT IS THEREFORE ORDERED** granting Ak-Chin's Motion to Dismiss CAIDD's counterclaim for unjust enrichment with prejudice (Doc. 73).

**IT IS THEREFORE ORDERED** granting the United States's Motion to Dismiss CAIDD's crossclaim for declaratory relief with prejudice (Doc. 56).

**IT IS FURTHER ORDERED** denying as moot Ak-Chin's prior Motion to Dismiss (Doc. 39).

**IT IS FURTHER ORDERED** denying as moot the United States's Motion to Dismiss (Doc. 55).

**IT IS FURTHER ORDERED** denying Ak-Chin's Motion to Strike (Doc. 38).

**IT IS FURTHER ORDERED** denying CAIDD's Jury Demand (Doc. 36).

Dated this 6th day of July, 2021.

Honorable John J. Tuchi
United States District Judge

---

[4] CAIDD's counterclaim and crossclaim against the United States will be dismissed and are thus no longer at issue; however, they also only seek equitable remedies.